UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 19 CR 50026 |
| ) | Judge Philip G. Reinhard |
| LUIS ALFREDO DELACRUZ, ) | |

**UNITED STATES' RESPONSE TO DEFENDANT LUIS ALFREDO DELACRUZ' MOTION TO SUPPRESS STATEMENTS**

The UNITED STATES OF AMERICA, by JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, submits the following response to defendant LUIS ALFREDO DELACRUZ' Motion to Suppress Statements (R. 34) ("Motion").

Defendant seeks to suppress his statements, asserting that he was in custody and that he was not read his *Miranda* rights. Following a hearing to resolve factual disputes between the parties, the Court should deny defendant's motion to suppress statements because the defendant was not in custody and the interview was consensual.

## BACKGROUND

The government anticipates that testimony and other evidence at a suppression hearing would establish the following:

On June 1, 2018, at approximately 8:10 a.m., Department of Homeland Security Special Agents Daniel Nugent, Jennifer Finerty, and Sean Hartnett and DeKalb County Detective Kris Mecca arrived at the defendant's home located at 1431

Sunrise Drive in DeKalb County to conduct an interview of the defendant. At approximately the same time, other law enforcement officers arrived at defendant's place of business, Alfredo's Iron Works located at 280 West Lincoln Highway, Cortland, Illinois to execute a search warrant.

When the Agents and Officer approached the defendant's home, they were greeted outside by the defendant's wife. The Agents and Officers were dressed in their ballistic vests that had police markings on them and their firearms were properly holstered. The agents explained that they wanted to speak with the defendant and asked whether they could come inside the residence. The defendant's wife allowed the law enforcement officers to enter the home. While inside, the agents and officer waited for the defendant as he finished up a phone call and he emerged from a back room to greet them. The law enforcement officers identified themselves by displaying their official badges and credentials and asked the defendant whether he was willing to speak with them. The defendant agreed and invited agents into his kitchen. While in the kitchen, an Agent showed the defendant the federal search warrant for the defendant's business referencing alien smuggling and harboring. The defendant's wife was present during the interview and moved freely throughout the home getting the defendant coffee at one point. The defendant remained free to move around as well, and he was never handcuffed or physically restrained in anyway. The defendant had his smart phone, but did not call anyone or request to call anyone including a lawyer. The tone of the interview was not hostile or combative. The defendant was never threatened or promised anything. No physical violence or

aggression was displayed toward the defendant or his wife in anyway. No officer or agent took out or displayed their weapons at any time.

During the interview, the defendant made several incriminating statements regarding how he purchased his workers from Mexico, brought them back to DeKalb County, and provided housing to them, which he later deducted from their paycheck as a "resident tax". The defendant also admitted he repaid himself for the debt he incurred for smuggling his workers into the United States by deducting these fees from their paychecks. The defendant estimated the he picked up aliens in San Antonio and Los Angeles a total of four times, each time picking up two aliens each time. The defendant also admitted that his workers obtained fake identification documents such as social security cards and green cards, and that these items were stored at his business. The defendant admitted that he knew what he was doing was illegal.

At the conclusion interview, the Agents asked for the defendant's consent to search his cell phone and work vehicle. The defendant agreed, read the forms provided by agents, and signed two consent to search forms: one for his phone and one for his work vehicle. *See* Ex. 2 and 3. Agents Nugent and Finerty, and Officer Mecca, along with the defendant each signed and dated the forms. *Id.* The interview ended at approximately 9:27 a.m., about one hour and 15 minutes after it started. The defendant left his home and met with law enforcement agents and officers who were executing a search warrant at his business. During the execution of the search warrant, the defendant showed Agent Nugent where the fake documents were stored.

After the conclusion of the execution of the search warrant, the defendant remained at his business and was not arrested.

On April 16, 2019, the defendant was charged in multi-count indictment with several counts of bringing in and harboring certain aliens in violation of Title 8, United States Code, Sections 1324(a)(1)(A) and 1324(a)(2)(B). R. 2. The defendant appeared in court for arraignment on April 23, 2018. R. 8. The defendant is currently on bond.

## ARGUMENT

Defendant argues that defendant's statements to the law enforcement officers should be suppressed because they were obtained as a result of a custodial interrogation without giving the defendant *Miranda* warnings.

An evidentiary hearing is needed to resolve factual disputes between the parties about whether defendant was in custody at the time he made incriminating statements. As set forth more fully below, the government's evidence at the suppression hearing will establish that defendant was not in custody at the time he made oral statements to law enforcement officers. As detailed below, following an evidentiary hearing, the Court therefore should deny defendant's motion to suppress statements.

**I.** ***Miranda* Warnings Were Not Required Because the Defendant Was Not In Custody.**

Defendant contends that his statements to the law enforcement officers should be suppressed because they were obtained through custodial interrogation and he

4

was not provided his *Miranda* rights. There is no dispute that the defendant was not given *Miranda.* The only issue is whether the defendant was in custody, and the government contends that after a hearing, the defendant's motion should be denied because the evidence and testimony at hearing will demonstrate that defendant was not arrested or in custody and he voluntarily agreed to the interviewed.

"A person is 'in custody' for *Miranda* purposes if there was a formal arrest or a restraint on his or her freedom of movement of the degree associated with a formal arrest." *United States v. Ambrose,* 668 F. 3d 943, 954-955 (7th Cir. 2012); *see also United States v. Thompson*, 496 F.3d 807, 810 (7th Cir. 2007). The inquiry into whether a suspect is in custody is an objective one and "[t]he Court has identified two discrete inquires critical to that determination: '(1) what were the circumstances surrounding the interrogation; and (2) would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave.'" *Id.* Once that determination is made, "courts apply the objective test to resolve the ultimate inquiry-whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* at 955 *citing Yarborough v. Alvarado,* 947 U.S. 652, 663 (2004). Relevant factors indicative of whether a person should be considered in custody include whether the (1) encounter occurred in a public place; (2) whether the suspect consented to speak with the officers; (3) whether the officers informed the individual that he was not under arrest; (4) whether the individual was moved to another area; (5) whether there was threatening presence of several officers and a display of weapons or physical force; (6) whether officers deprived the suspect of

5

documents needed to depart; and (7) whether the officers' tone of voice was such that their requests were likely to be obeyed. *Id. citing United States v. Barker,* 467 F.3d 625, 629 (7th Cir. 2006). This is a non-exhaustive list. *Id.* Interviews in the suspect's home are generally non-custodial. *Beckwith v. United States,* 425 U.S. 341 (1976). "Where a person voluntarily agrees to meet with law enforcement agents, that weighs against a finding that the person could reasonably believe he is in custody." *Ambrose,* 668 F.3d at 956 *citing Yarborough,* 541 U.S. at 661.

As set forth above, when law enforcement officers came to meet the defendant on June 1, 2018, the defendant had a consensual encounter with them at his home. After receiving consent to enter the residence from the defendant's wife, the defendant voluntarily agreed to meet with law enforcement agents. Based on the officers' attire, the defendant knew he was speaking with law enforcement and agreed to speak with them. The defendant, not the officers, suggested to meet and talk in his kitchen. Although the defendant was not told that he was not under arrest and/or that he was free to leave, this is not dispositive on the issue of custody. *See United States v. Ambrose,* 668 F. 3d at 954; *see also Thompson v. Keoshane,* 516 U.S. 99, 113-6 (1995) (the *Miranda* test for custody does not ask whether the suspect was *told* that he was free to leave; the test asks whether 'a reasonable person [would] have *felt*, he or she was not at liberty to terminate the interrogation and leave)(emphasis added). The officers were honest with the defendant and showed the defendant a copy of the search warrant for his business. The defendant who had access to his phone did not ask or call a lawyer after receiving this document. The defendant was

never transported or moved to another area of his home, nor did he tell the officers to leave. The defendant was not threatened, promised anything or mentally coerced in any way. The defendant knowingly and voluntarily consented in writing to a search of his phone and work car. The defendant freely left the interview and met the officers at his business. The defendant's home was never searched. The entire interview lasted only approximately one hour and fifteen minutes. The defendant was not handcuffed or physically restrained in any way. The defendant's wife was present throughout the interview. The defendant was not arrested, which weighs against a custody finding. *See United States v. Patterson,* 826 F.3d 450, 458 (7th Cir. 2016). The defendant later surrendered himself on his own accord.

Defendant implies that the size of his kitchen favors a custodial setting. First, the defendant chose the kitchen for the interview. Second, the defendant's wife was present for the interview. Third, the interview was short in length. Finally, the defendant was not locked or forced to stay in the kitchen, nor did the agents prevent him from leaving the kitchen. These factors, among others in this case, favor a finding of not in custody. *See United States v. Clark,* 798 Fed. Appx. 5, 8 (7th Cir. 2020)(finding "an interrogation in familiar surroundings lasting under an hour 'generally weights in favor of finding that [the suspect] was not in custody.'") Even if the size of the kitchen was an issue, standing alone, this does not establish custody.

The defendant also asserts that officers blocked both the front and back doors of the house. R. 34 at 6. In her affidavit, the defendant's wife states that an officer stood in front of the front door and another was at the back door to the kitchen. R.

34-1 at 6. Presumably, this is the information relied upon to form the basis of the defendant's motion. The *Miranda* test for custody asks whether 'a reasonable person *in the suspect's position* would have understood the situation. *See Ambrose,* 668 F. 3d at 954. The perspective of the defendant's wife is irrelevant for the purposes of determining custody of the defendant. In any event, the defendant's wife indicated that only three officers were in the kitchen, and another officer in the living room. This is not a threatening presence of several officers and it is not alleged that any of these officers displayed their weapons or used physical force.

Under the totality of these circumstances, a reasonable person in the defendant's position would have felt free to leave, and therefore was not in custody for the purposes of *Miranda*.

## CONCLUSION

The government's evidence will establish that defendant consented to an interview at his home and that he was not in custody for *Miranda* to apply. As a result, following a hearing, his motion to suppress should be denied.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: */s/ Vincenza Tomlinson*
VINCENZA TOMLINSON
Assistant United States Attorney
327 South Church Street, Suite 3300
Rockford, Illinois 61101
(815) 987-4444

8

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that on November 19, 2020 in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document:

**UNITED STATES' RESPONSE TO DEFENDANT LUIS ALFREDO DELACRUZ' MOTION TO SUPPRESS STATEMENTS**

was served pursuant to the district court's ECF system as to ECF filers.

                                                 */s/ Vincenza Tomlinson*
                                                 VINCENZA TOMLINSON
                                                 Assistant United States Attorney
                                                 327 South Church Street, Suite 3300
                                                 Rockford, Illinois 61101
                                                 (815) 987-4444